440 P.2d 143

**CREDIT BUREAU OF PRESTON, dba Credit Bureau of Montpelier, and J. W. Brewer Service Company, co-partners, doing business in Ogden, Utah, and J. W. Brewer Tire Company, a foreign corporation, Plaintiffs-Respondents,**

v.

**R. S. SLEIGHT, W. Evan Hoff and Nona Hoff, husband and wife, and Internal Revenue Service of the U. S. Treasury Department, Defendants-Appellants.**

No. 9902.

Supreme Court of Idaho.
April 30, 1968.

Baum, Peterson & Kugler, Pocatello, for appellants.

Elbert E. Gass, Boise, for respondents.

SPEAR, Justice.

This action was instituted by plaintiffs to determine the priority of their mortgage and judgment liens upon certain real property and to foreclose the said mortgage lien in satisfaction of both these claims.

## STATEMENT OF FACTS

(A) *First Mortgage to Appellant Sleight—July 15, 1954*

On July 15, 1954, defendants W. Evan Hoff and Nona Hoff, for valuable consideration, executed a promissory note to appellant Sleight in the sum of $1500, which note was secured by a mortgage on certain real property then owned by the Hoffs. This mortgage was duly recorded on the 16th of July, 1954 in the records of the proper county. Between 1954 and 1960 payments in the sum of $530 were made by the Hoffs to Sleight.

(B) *Second Mortgage to Respondent Credit Bureau—June 9, 1959*

On June 9, 1959, the Hoffs executed another promissory note in the sum of $950 to the respondent Credit Bureau as a third-party creditor. This note was also accompanied by a mortgage on the same premises heretofore mortgaged, which mortgage was presumably signed by the Hoffs, duly acknowledged on June 23, 1959, and recorded.

W. Evan Hoff testified that the signature appearing on this mortgage was his own, but that at the time of its execution this document had not been completed. He further stated that he had signed the mortgage in blank and had never appeared before the notary whose name appears thereon so that his signature might be acknowledged.

Nona Hoff testified that the signature on this instrument appeared to be her own, although she did not remember signing it, nor did she recall the type of instrument she was signing. Neither did she ever remember appearing before a notary to acknowledge her signature.

In conjunction with this testimony, appellant's counsel moved to amend his answer to the complaint so that he might assert the defense that the mortgage had not been duly executed (acknowledged) and was therefore invalid. Over respondents' counsel's objection, this motion was granted.

Subsequently, it was stipulated between counsel that the parties would be bound by the affidavit of the notary public as to the circumstances surrounding the execution and acknowledgment of the June 9th mortgage. The affidavit is as follows:

"I do not recall any of the circumstances surrounding my execution of the acknowledgment except that it was done at the request of Roland Hansey. If the people do not appear before me to acknowledge a mortgage, I usually call them by telephone to get their acknowledgment. I do not remember what was done in this instance. I have executed acknowledgments on conditional sales contracts and chattel mortgages without the people appearing before me and without checking the individuals to ascertain if the signatures are in fact those of the mortgagors."

(C) *Judgment Lien—August 18, 1960*

On August 18, 1960 a judgment was granted in District Court for the then 13th Judicial District, State of Idaho, Bear Lake County, in favor of respondents J. W.

Brewer Service Company and J. W. Brewer Tire Company for the sum of $897.95 plus attorney's fees ($75.00) and costs ($21.40), all bearing interest at the rate of 6%, which judgment was regularly recorded.

(D) *Transfer of Warranty Deed from Hoffs to Sleight; Concurrent Rental and Repurchase Agreement—August 29, 1960*

On August 29, 1960, defendants Evan Hoff and Nona Hoff executed and delivered to appellant Sleight a warranty deed to the property covered by the previous two mortgages.

Concurrent with this transfer the same parties entered in a contract whereby Sleight:

"hereby agrees that for the consideration of receipt of a warrantee deed for the home and property upon which he now holds a mortgage in the amount of $1500.00 he will rent same to parties of the second part [Hoffs] the said property for a period of two years at the rate of $15.00 per month payable in advance. He further agrees that parties of second part have the opportunity to repurchase said property at any time within the two year period for the amount of $1500.00 plus any accumulated rent, insurance or taxes that might accrue against said property."

(D–1) *Release of 1954 Mortgage—August 17, 1961*

It was stipulated by counsel for both parties that a release of Sleight's mortgage was regularly recorded on August 17, 1961, and the note was cancelled on the same date.

During the course of trial, counsel for appellant attempted to elicit certain testimony to the effect that the warranty deed and agreement were no more than a reaffirmance of the mortgage and that the original note and mortgage were understood by the parties to still be in existence and unsatisfied. Various objections were raised by respondents' counsel regarding the admissibility of such testimony on the grounds that it would violate the best evidence and parole evidence rules as well as being without foundation, irrelevant and immaterial. The trial court ruled that testimony pertaining to the parties' intentions or state of mind with regard to anything contained in the document was inadmissible but did admit the following testimony over objections by counsel:

(1) W. Evan Hoff testified that he executed this deed over to Sleight in 1960 because he was behind on his taxes and didn't want to lose the property, but that he still owed Sleight the money. He later talked with Sleight about keeping up the rent so that he could redeem the property and purchase it back in his own name. Hoff further testified that Sleight paid him no money for the deed. Since the execution of the deed Hoff made some rent payments to Sleight with the hope of eventually picking up the property free and clear. Sometime in 1963 Hoff went to Doyle Sleight and inquired about getting the property back if he could clear title.

(2) R. S. Sleight testified that he accepted Hoff's deed in order to protect the property (and his interest therein) from being sold for taxes. Subsequent to 1961 Hoff advised him that he wished to pay off the mortgage and redeem the property, but this deal fell through when Hoff was unable to secure a bank loan. (In aid of objection, counsel for respondents did elicit testimony from Sleight that the August 29, 1960 contract did embody the entire agreement between the parties.)

At the time the deed was delivered, Hoff asked Sleight to take it as additional security until he was in a position to redeem it. Subsequent to his 1961 release, Hoff acknowledged to Sleight that he still owed him on the old note and mortgage.

Sleight also testified that he released the mortgage so that when Hoff came to pick it up [redeem], he [Sleight] would not have to re-release it. At the time of this release, no further money had been paid to Sleight on the note and mortgage, and the $15.00 per month rent was to cover the costs of insurance, taxes and depreciation.

(E) *Petition for Bankruptcy—November 29, 1962*

In November of 1962, Hoff filed his petition in bankruptcy and was subsequently discharged in 1963. His petition did not list any ownership of or equity in the property in question, although Sleight was listed as a creditor. Hoff's lawyer told him it was not necessary to list the mortgage because Sleight held the deed and was paying taxes on this property.

After noting that the U. S. Treasury Department had filed a disclaimer and that the Hoffs had defaulted, the trial court found, among other things, that:

(1) The 1959 mortgage was duly executed and acknowledged so as to entitle it to be recorded;

(2) On the 29th of August, 1960, the Hoffs executed and delivered to appellant Sleight a warranty deed to the property described in the mortgages to Sleight and respondent Credit Bureau;

(3) On the same day the Hoffs entered into a contract with Sleight whereby the Hoffs were to rent the property described in the aforesaid deed and mortgage from Sleight with the right and option to repurchase the same for $1500 plus insurance and taxes within 2 years;

(4) On August 17, 1961 Sleight released of record his 1954 mortgage held on the same premises;

(5) The Hoffs have not paid any of the principal or interest due on the 1959 note to the Credit Bureau nor have they paid any of the 1960 judgment granted to J. W. Brewer Service and Tire Co.;

(6) Pursuant to the 1959 mortgage respondent Credit Bureau is entitled to reasonable attorney's fees and costs;

and concluded:

(1) That respondent Credit Bureau was entitled to have its mortgage foreclosed;

(2) That its mortgage lien attached prior to the conveyance (August 29, 1960) as did respondent Brewer's judgment lien; and as such the conveyance (warranty deed) is subject to these two liens in order of their effective dates;

(3) That the Hoffs are also personally liable to appellant Sleight in the sum of $1,392.47 plus interest and that he is entitled to a third lien and to any remaining funds after the foreclosure of the aforesaid mortgage and judgment lien and payment to respondents.

In its memorandum decision, the court stated that although W. Evan Hoff did not recall signing the 1959 mortgage—but admitted the signatures thereon were theirs—and although the notary did not recall the circumstances surrounding acknowledgment of the mortgage, it did appear to the court that these signatures were genuine and properly and timely affixed and acknowledged, and that defendants' lack of memory did not prove or disprove this fact.

The subsequent release of the 1954 mortgage by Sleight therefore placed the 1959 mortgage and August 8, 1960 judgment lien prior in time and interest to the August 29, 1960 conveyance of the deed.

On appeal, appellant raises the following assignments of error:

(1) The court erred in refusing to allow the witnesses to testify in respect to their *intent* that the deed constituted only a mortgage and

that the original indebtedness was reserved.

(2) The court erred in holding that the 1959 mortgage was entitled to be foreclosed as a *first* mortgage and that the judgment lien was also prior in right to the interest of Sleight, and that the same could be satisfied by foreclosure.

(3) The court erred in finding that the 1959 mortgage was duly executed and acknowledged.

Initially, appellant contends that before a mortgage lien may be duly recorded so that it will impart constructive notice to subsequent purchasers or creditors, it must first be personally acknowledged before an official designated by statute with such authority, and that the facts in the instant case conclusively prove that there was no personal acknowledgment given by the Hoffs to the notary with respect to the 1959 mortgage.

With the first portion of appellant's contention we agree. I.C. § 55–805 provides that "before an instrument may be recorded, unless it is otherwise expressly provided, its execution must be acknowledged by the person executing it," while I.C. § 55–707 states that "the acknowledgment of an instrument must not be taken, unless the officer taking it knows, or has satisfactory evidence, on the oath or affirmation of a credible witness, that the person making such acknowledgment is the individual who is described in, and who executed, the instrument." Moreover, the certificate of acknowledgment requires words to the effect that the affiant "personally appeared" before the person taking the acknowledgment. (I.C. § 55–710)

Thus, where an instrument is recorded without an acknowledgment (Harris v. Reed, 21 Idaho 364, 121 P. 780 (1912)), or where the certificate of acknowledgment shows on its face that there was no personal appearance (Little v. Bergdahl Oil Co., 60 Idaho 662, 95 P.2d 833 (1939)), or where it is admitted by the party seeking to uphold the validity of the acknowledgment that it was not taken personally before a notary (Myers v. Eby, 33 Idaho 266, 193 P. 77, 12 A.L.R. 535 (1920)), or where it is shown that the notary has a beneficial or financial interest (Johnson v. Casper, 75 Idaho 256, 270 P.2d 1012 (1954)), then the recording of an instrument which is not entitled to be recorded under the statute because of a defective acknowledgment cannot impart constructive notice. (See Harris v. Reed, supra.)

However, the trial court found that the 1959 mortgage was "duly acknowledged so as to entitle it to be recorded."

In Idaho a certificate of acknowledgment, complete and regular on its face, raises a presumption in favor of the truth of every fact recited therein, and the burden of proving a state of facts which will overcome the probative force of the certificate is upon the party assailing it. Clegg v. Eustace, 40 Idaho 651, 237 P. 438 (1925). This burden must be met by clear and convincing evidence (Sneddon v. Birch, 39 Idaho 720, 230 P. 29 (1924)), and the uncorroborated testimony of the party acknowledging the instrument is insufficient to overcome the force of the certificate. Clegg v. Eustace, supra.

In the instant case, the parties stipulated that they would be bound by the affidavit of the notary as to the circumstances surrounding the execution and acknowledgment of the 1959 mortgage. His affidavit recites that he did not recall any of the circumstances therein, although it had sometimes been his practice to take an acknowledgment in the absence of the party to be bound. Such evidence is insufficient to impeach the validity of this acknowledgment. Blake v. Blake, 69 Idaho 214, 205 P.2d 495 (1949); First Nat'l Bank of Pocatello v. Commercial Union Assurance Co., 40 Idaho 236, 232 P. 899 (1925).

The facts in the *First Nat'l Bank of Pocatello* case, supra, are substantially the same as those here wherein the court stated:

"This court has heretofore held that a notary's certificate will not be vacated up-

on the unsupported testimony of the party bound, where such party in fact signed the instrument attacked. [Citations omitted.]

"The fact that the notary had occasionally taken acknowledgments without the presence of the signers is no direct evidence that he did so in this particular case. The supporting evidence must be clear and convincing as well as that of the party seeking to avoid. To hold that such evidence as is here given satisfies the required corroboration would be to substitute a mere guess on the part of the trial court. The finding will not be disturbed." (at pp. 250–251, 232 P. at p. 903)

■ Concerning the issue of whether the deed, absolute on its face was, in fact, a mortgage, this court in Dickens v. Heston, 53 Idaho 91, 21 P.2d 905, 90 A.L.R. 944 (1933), specified with great care and particularity the criteria to be applied in determining whether a deed, absolute upon its face, is in fact a mortgage; namely, (a) existence of debt to be secured; (b) satisfaction or survival of the debt; (c) previous negotiations of parties; (d) inadequacy of price; (e) financial condition of grantor; and (f) intention of parties.

■ While all these factors are to be considered, the controlling test to be applied is whether the grantor sustains the relation of debtor to the grantee after the execution of the instrument. Clinton v. Utah Constr. Co., 40 Idaho 659, 237 P. 427 (1925). A mortgage is an incident of the debt, and without a debt there can be no mortgage. Hawe v. Hawe, 89 Idaho 367, 406 P.2d 106 (1965); Shaner v. Rathdrum State Bank, 29 Idaho 576, 161 P. 90 (1916).

In the instant case, it was stipulated by counsel for both parties at the pre-trial conference that the Hoffs' note and mortgage were respectively cancelled and released as of August 17, 1961, all of which appears upon the face of the note and mortgage regularly recorded and properly admitted into evidence.

■ Moreover, it is a well-settled rule that where one asserts that a deed shall be given a different construction from that clearly appearing on its face, the burden is upon him to show by clear and convincing evidence that a mortgage, and not a sale with the right to repurchase, was intended. Clontz v. Fortner, 88 Idaho 355, 399 P.2d 949 (1965); Shaner v. Rathdrum State Bank, supra. Whether the evidence is clear and convincing is primarily for the trial court. Gem-Valley Ranches, Inc. v. Small, 90 Idaho 354, 411 P.2d 943 (1966); Wright v. Rosebaugh, 46 Idaho 526, 269 P. 98 (1928), wherein the court held:

"The trial court is the appropriate tribunal to weigh the evidence, and determine whether it is convincing and satisfactory, within the meaning of the rule. It has been said that in such cases, as in others, the determination of that court in favor of either party upon conflicting or contradictory evidence is not open to review in the appellate court." (Citations omitted.) (at p. 529, 269 P. at p. 99)

■ The evidence in this case supports the finding and conclusion of the trial court that appellant Sleight was a purchaser and not a mortgagee.

■ Appellant next contends that the trial court erred in ruling inadmissible testimony pertaining to the parties' intent or state of mind. While parol evidence is admissible for the purpose of showing that a conveyance of land, absolute in form, is a mortgage (I.C. § 45–905; Gem-Valley Ranches, Inc. v. Small, supra), appellant was not prejudiced by the court's ruling in view of all the evidence concerning the intention of the parties, that was in fact admitted during the trial.

■ Appellant's final contention to the effect that respondent Brewer's judgment

lien could not be satisfied on foreclosure of the senior mortgage, is also without merit. I.C. § 45–1302[1] provides for the determination of all rights of interested parties upon foreclosure proceedings, while I.C. § 6–102[2] permits the disposition of surplus money to those persons entitled to it after payment of the amount due on the mortgage.

Judgment affirmed. Costs to respondents.

SMITH, C. J., and TAYLOR, McQUADE and McFADDEN, JJ., concur.

1. "In any suit brought to foreclose a mortgage or lien upon real or personal property, the plaintiff, cross-complainant or plaintiff in intervention may make as party defendant in the same cause of action, any person, including parties mentioned in section 5–325 having, claiming or appearing to have or to claim any title, estate, or interest in or to any part of the real or personal property involved therein, and the court shall, in addition to granting relief in the foreclosure action, determine the title, estate or interest of all parties thereto in the same manner and to the same extent and effect as in the action to quiet title." (Prior to 1967 Amendment)

2. "If there be surplus money remaining after payment of the amount due on the mortgage, lien or encumbrance, with costs, the court may cause the same to be paid to the person entitled to it, and in the meantime may direct it to be deposited in court."